George FALTER et al., Plaintiffs,

v.

The VETERANS' ADMINISTRATION et al., Defendants.

Civ. No. 79–2284.

United States District Court,
D. New Jersey.

Nov. 21, 1980.

Stanley C. Van Ness, Trenton, N.J., New Jersey Public Advocate by William F. Culleton, Jr., Trenton, N.J., Asst. Deputy Public Advocate, Michael L. Perlin, Director New Jersey Public Advocate, Division of Mental Health Advocacy; Laura M. Le Winn, Deputy Director New Jersey Public Advocate, Division of Mental Health Advocacy, Trenton, N.J., Jay Centifani, Legal Asst., on brief, for plaintiffs.

William W. Robertson, U. S. Atty. by Anne C. Singer, Asst. U. S. Atty., Newark, N.J., Audley Hendricks, Asst. Gen. Counsel, Veterans' Administration, on brief, for defendants.

OPINION

HAROLD A. ACKERMAN, District Judge.

### I.  Introduction

This is a class action brought on behalf of all patients at the Veterans' Administration

Medical Center at Lyons, New Jersey, (Lyons), and all former patients who may in the future be admitted or committed to Lyons. The plaintiffs contend that the Veterans' Administration (V.A.) is not running Lyons in a lawful manner. According to the complaint, various aspects of the Lyons' operation violate the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Amendments to the United States Constitution, as well as §§ 504 and 505 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a; a variety of V.A. legislation, 38 U.S.C. §§ 210(c)(1), 218, 220, 610, 621(1), 623, 4101(a), and 4115; the Administrative Procedure Act, 5 U.S.C. §§ 552 *et seq.*; and the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §§ 6000 *et seq.* The plaintiffs also suggest in their briefs that the V.A. may also be violating New Jersey law in its treatment of involuntarily committed patients. The defendants have filed two motions for partial dismissal and/or summary judgment on the plaintiffs' claims. These two motions originally sought a decision on nineteen aspects of the complaint.[1] Two of these requests were subsequently withdrawn,[2] leaving seventeen matters for decision in this opinion. In deciding these issues, I have had the benefit of excellent briefs from the parties. I have decided to dismiss all of the plaintiffs' statutory claims for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) due to the operation of 38 U.S.C. § 211(a). I have also decided that the plaintiffs' equal protection claim survives the defendants' motion and that this conclusion mandates a denial of most of the remaining aspects of the defendants' motion. Finally, I have concluded that the plaintiffs have standing to assert a First Amendment challenge to 38 C.F.R. § 1.218.

## II.  The Statutory Claims

The plaintiffs allege that the Veterans' Administration operates its Lyons hospital in a manner that violates several statutes including § 504 and § 505 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a, and the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §§ 6000 *et*

1.  The first motion, filed on February 4, 1980, seeks either dismissal or summary judgment as to the following:

    1.  The allegations concerning 38 C.F.R. § 1.218 ("¶¶ 61–66 of Complaint).

    2.  The Third Cause of Action, concerning religious freedom.

    3.  The claims concerning food served at Lyons.

    4.  The claims concerning "adverse entries" in plaintiffs' medical records.

    5.  The allegations of due process infringements attaching to the giving of passes to patients, without releasing their driver's licenses.

    6.  The Sixth Cause of Action concerning cruel and unusual punishment.

    7.  All claims concerning losses of patients' clothing or other possessions.

    8.  All allegations sounding in "assault and battery."

    9.  All claims for relief which seek the disciplining of hospital employees.

    10.  The Ninth Cause of Action based upon a Right to Treatment.

    11.  The Tenth Cause of Action based upon equal protection.

    12.  The Twelfth Cause of Action based upon alleged denial of V.A. hospital services.

    13.  The Fourteenth Cause of Action based upon the Developmental Disabilities and Bill of Rights Act.

    14.  The Thirteenth Cause of Action requesting that the Court order the V.A. to promulgate regulations.

    15.  All claims based on restrictions placed on patients' funds which are in V.A. accounts.

The second motion, filed on May 9, 1980, seeks either dismissal or summary judgment as to the following:

    1.  The allegations and claims concerning inadequate locker and storage space.

    2.  The allegations and claims concerning lack of outdoor exercise for patients on closed wards at Lyons.

    3.  The allegations and claims concerning Lyons' policy against permitting patients to visit other patients on their wards.

    4.  The allegations and claims concerning routine sanitary searches at Lyons.

2.  On June 23, 1980, the defendants sent a letter to the Court in which they withdrew, without prejudice to renewing the issues, their motions for dismissal or summary judgment as to "All claims for relief which seek the disciplining of hospital employees" (No. 9 in the February 4, 1980, notice of motion) and "the Thirteenth Cause of Action requesting that the court order the V.A. to promulgate regulations." (No. 14 in the February 4, 1980, notice of motion.)

seq. In accordance with sound jurisprudential rules, these statutory claims must be decided before any consideration of the plaintiffs' constitutional claims. *Siler v. Louisville & Nashville R. R. Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 53 L.Ed. 753 (1909); *Halderman v. Pennhurst State School & Hospital*, 612 F.2d 84, 94 (3d Cir. 1979). The defendants argue, however, that any such review of the plaintiffs' statutory claims is barred by 38 U.S.C. § 211(a). That statute provides, in relevant part:

> ... the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

This statute was interpreted by the Supreme Court in *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), where it was held not to bar judicial review of constitutional challenges to V.A. regulations and actions. 415 U.S. at 373–74, 94 S.Ct. at 1168–69. In that case, Justice Brennan explained in § 211(a):

> The prohibitions [of § 211(a)] would appear to be aimed at review only of those decisions of law or fact that arise in the *administration* by the Veterans' Administration of a *statute* providing benefits for veterans. A decision of law or fact "under" a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts.

415 U.S. at 367, 94 S.Ct. at 1165. In the present case, the plaintiffs have challenged numerous practices of the Lyons V.A. Hospital, an institution that is unquestionably run pursuant to authority granted by laws "providing benefits for veterans." The defendants' contention is that even if one assumes that the statutes relied upon by the plaintiffs are binding upon the V.A., it is still up to the V.A. to interpret those laws as they may apply to the problems it faces in its day to day operation of Lyons and

that the Court is without jurisdiction to review its interpretation.

The plaintiffs, of course, disagree with the defendants as to the reach of § 211(a). They claim that § 211(a) was only intended to bar review of "adjudicatory" decisions made by the V.A. in determining such matters as the eligibility of people for Veterans' benefits. That is to say, that it bars review of whether the V.A. interpreted the law properly in deciding to deny admission to the Lyons Hospital to an applicant, but that it does not bar review of whether a person is treated in a lawful manner once admission to the hospital is granted.

The distinction made by the plaintiffs is certainly not one made either in the language of the statute or in Justice Brennan's opinion in *Johnson v. Robison*. To the contrary, such questions as whether the Rehabilitation Act of 1973 is applicable to Veterans' hospitals and what that statute requires in the context of such hospitals seem to precisely fit the statutory language in that they are questions of law and they arise in relation to the V.A.'s administration of laws providing hospital benefits for veterans. Moreover, the distinction drawn by the plaintiffs between adjudicatory decisions and other decisions made by the V.A. would, if followed, "involve the courts in day–to–day determination and interpretation of Veterans' Administration policy," which, according to *Johnson v. Robison*, § 211(a) prohibits. *Id.* at 372, 94 S.Ct. at 1168.

The plaintiffs have cited such recent cases as *Wayne State University v. Cleland*, 440 F.Supp. 806 (E.D.Mich.1977) *affirmed in part and reversed in part* 590 F.2d 627 (6th Cir. 1978), and *Evergreen State College v. Cleland*, 621 F.2d 1002 (9th Cir. 1980), for the proposition that § 211(a) should be narrowly construed as a bar to this Court's jurisdiction. These cases held

> that 38 U.S.C. § 211(a) was designed to prevent judicial review of decisions of the V.A. on individual claims, but that it would not bar judicial review of constitutional challenges to provisions of the vet-

erans benefits legislation and regulations issued thereunder, and that the statute would not preclude judicial review of challenges to the Administrator's authority to issue regulations.

*Evergreen State College v. Cleland*, 621 F.2d at 1008. The present case is distinguishable from these cases because no challenge is being made to the V.A.'s authority to promulgate rules, rather the plaintiffs contend that the V.A. at Lyons is failing to live up to its statutory obligations. Such an argument is no different from the clearly non-reviewable situation where a veteran claims that the V.A. failed to extend benefits that it has a statutory obligation to provide to that veteran. In both cases the veteran is claiming that he or she is not getting his or her statutory entitlement.

It is true that Congress' primary purpose in enacting § 211(a) was to bar review of adjudicatory-type determinations made by the V.A. in determining whether to grant or continue benefits. *See Johnson v. Robison*, 415 U.S. at 368–374, 94 S.Ct. 1160, 1166–1169, 39 L.Ed.2d 389; House Report No. 91–1166, 1970 U.S.Code Cong. & Admin. News, pp. 3723, 3729–31. Nevertheless, the language that it chose to employ in barring judicial review is far broader than that narrow purpose would require. Indeed, the House Report sets forth a broader purpose in its description of the effect of the statute: "The restated section 211(a) will make it perfectly clear that the Congress intends to exclude from judicial review all determinations with respect to noncontractual benefits provided for veterans and their dependents and survivors." 1970 U.S.Code Cong. & Admin.News, p. 3731.

▮ The plaintiffs are, of course, correct in their assertion that courts should be reluctant to conclude that Congress has barred review of administrative actions. *See Barlow v. Collins*, 397 U.S. 159, 165, 90

S.Ct. 832, 836, 25 L.Ed.2d 192 (1970); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967); *Pollard v. Romney*, 512 F.2d 295, 298 (3d Cir. 1975); *Hoffmaster v. Veterans Administration*, 444 F.2d 192 (3d Cir. 1971). Nevertheless, the same cases stand for the proposition that when Congress has expressly or impliedly barred judicial review then the courts must decline review and dismiss the claims for lack of jurisdiction. I have concluded that the broad language of § 211(a) requires me to do so in this case and grant the defendants' motion insofar as it seeks dismissal of all of the plaintiffs' statutory claims for lack of subject matter jurisdiction.[3] *Johnson v. Robison* makes it clear, however, that the plaintiffs' constitutional claims must each be examined on their merits. The remainder of this opinion will discuss those constitutional claims that are put in issue by the defendants' motion.

### III. The Equal Protection Claims

The complaint in this case raises a large number of constitutional claims, several of which have been put in issue by the defendants' motions. Among the claims put in issue by the defendants are those contained in the plaintiffs' "Tenth Cause of Action: Equal Protection of the Laws." The relevant portion of the complaint reads as follows.

150. Plaintiffs incorporate by reference paragraphs 1 through 125 as fully as though the same were set forth herein at length.

151. The rules, practices, procedures and conditions set forth herein are established and permitted by defendants solely on account of the psychiatric disabilities and histories of plaintiffs and their class.

---

3. While this conclusion affects the analysis of several of the matters discussed *infra*, it specifically disposes of two of the defendants' requests in its February 4, 1980, motion for dismissal or summary judgment. Namely:

   12. The Twelfth Cause of Action based upon alleged denial of V.A. hospital services.

   13. The Fourteenth Cause of Action based upon the Developmental Disabilities and Bill of Rights Act.

Dismissal is granted as to all of these matters, except insofar as issues and facts raised in relation to those claims may be relevant to constitutional issues before the Court.

152. Such rules, practices, procedures and conditions are not established or permitted for veteran inpatients in V.A. non–psychiatric hospitals.

153. By depriving Lyons patients of numerous rights, privileges and freedoms not denied to veterans in V.A. general hospitals, defendants have discriminated and continue to discriminate against them solely on account of their mental or emotional illness or handicap, in violation of the equal protection clause of the Fifth Amendment to the Constitution, as well as §§ 504 and 505 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a. The defendants have moved to dismiss this claim for failure to state a claim upon which relief may be granted because the complaint also contains a paragraph which alleges that psychiatric and non–psychiatric patients at Lyons "are equally subjected to rules and conditions set forth in this complaint." Complaint ¶ 49. According to the defendants, this latter allegation is fatal to the plaintiffs' equal protection claim because it admits that there is no disparity between the treatment of psychiatric patients and non–psychiatric patients, i. e., it admits that all Lyons patients are treated equally by the V.A.

■ The plaintiffs' principal response to this argument is that the defendants have misread the complaint. According to the plaintiffs, the claim is not that patients are subjected to disparate treatment within Lyons Hospital, but that Lyons patients are treated in a disparate manner in comparison with patients at other V.A. hospitals. The plaintiffs also argue that their allegations and proofs on the equal protection claims are sufficient to withstand a motion to dismiss or for summary judgment whether they are analyzed using strict scrutiny or rational basis equal protection standards. I have concluded that the plaintiffs are correct in their assertion that the equal protection claims are sufficient to survive the present motion.

At the outset, I would like to note that in deciding this question I have considered matters outside of the pleadings and have,

therefore, considered the defendants' motion as one for summary judgment. Fed.R. Civ.P. 12(b) and 56. Accordingly, I have taken that view of the evidence most favorable to the plaintiffs as the parties opposing the motion, and I have given the plaintiffs the benefit of all favorable inferences that might reasonably be drawn from the evidence. *Sanford v. O'Neill*, 616 F.2d 92, 96 (3d Cir. 1980); *Janek v. Celebrezze*, 336 F.2d 828, 834 (3d Cir. 1964).

Even applying summary judgment standards, however, it is necessary to identify the nature of the claim made by the plaintiffs. The language chosen by the plaintiffs is susceptible to several readings, but I believe that it can be read to support the interpretation pressed by the plaintiffs. Certainly paragraph 153 of the complaint draws the comparison between Lyons and other V.A. hospitals and makes this comparison the basis of the equal protection claim. *See also* Complaint ¶ 152. This claim can be reconciled with the portion of the complaint that the defendants find contradictory since paragraph 153 speaks of all Lyons patients and not just psychiatric ones. It is true that the plaintiffs generally seem to be alleging that the source of the V.A.'s disparate treatment of Lyons patients is invidious discrimination against psychiatric patients. But as I understand the plaintiffs' claims they are contending that all Lyons patients, psychiatric or otherwise, are being tarred with the same brush. It seems to me that for purposes of the initial analysis of the equal protection claim the disputes between the parties as to how many psychiatric patients are at Lyons, whether Lyons is properly categorized as a psychiatric hospital, a general hospital, or one that is in transition between a psychiatric hospital and a general hospital, and whether the alleged discrimination against Lyons patients stems from the psychiatric label can be ignored. The plaintiffs' equal protection claim can, at least for purposes of initial analysis, be boiled down to two basic contentions:

1) Patients are treated in a substantially different manner at Lyons from the

way patients are treated at other V.A. hospitals.

2) The defendants do not have a constitutionally sufficient reason for this unequal treatment.

In considering the sufficiency of the plaintiffs' showing as to these contentions I have employed the rational relationship model of equal protection analysis, not because I have rejected plaintiffs' arguments as to the applicability of stricter standards of equal protection review, but because if the plaintiffs can survive summary judgment on that standard of review it follows *a fortiori* that summary judgment would be survived on any stricter standard that may be applicable.

When every factual inference is drawn in favor of the plaintiffs it can be concluded that they have established their first basic contention that patients at Lyons are treated in a substantially different manner from patients at other V.A. hospitals. This conclusion may be drawn from several of the affidavits that they have submitted. These affidavits contain, *inter alia*, the following remarks:

> I have spent time in a V.A. hospital in the Los Angeles area—named, as I recall, the Wadsworth V.A. Hospital, on Wilshire Boulevard. They have separate buildings for psychiatric and medical patients, and I was in the medical hospital. The conditions are much different there [from the conditions existing at Lyons]— it's just like a regular hospital. Two patients are assigned to a room. They have a cart that brings the telephone to your bed if you need it, instead of having a phone outside of the ward door which is frequently locked. There is no such thing as a privilege card. Visiting between wards is permitted. The staff treat you the way patients are treated in civilian hospitals—with respect.

Affidavit of Allen Whitlock, filed June 6, 1980, ¶ 17.

> Mr. Hilbert tried to organize a patients' government similar to the one he had learned about at Coatesville V.A. hospital, known as the *Patients' Forum*. Each ward would designate one patient to meet monthly together with representatives of the hospital staff. He wrote a letter to the hospital director but received no response. He asked the doctor on the ARU to help, but he said it was not needed. He tried to see the hospital director, but was diverted to the assistant director's office and then ordered to leave by his secretary.

Plaintiffs' response to the defendants' interrogatory No. 29, Part I, incorporated in affidavit of William Hilbert, filed June 6, 1980, ¶ 18.

> 1. I am a patient at Lyons Hospital, Ward 53C east, a psychiatric ward. Previously, I was a patient at San Francisco Medical Center, Menlo Park, Palo Alto Medical Center in California, as well as the V.A. Hospital in Tucson, Arizona.

> 2. I have experienced the rules, procedures and conditions at these various hospitals, and compared to the others, Lyons is low on dignity for the patients.

> 3. In the other hospitals, the doctors sought out the patients to give them one-half hour of individual therapy each day. You received more attention from the doctors than you do here. Here I have received no individual attention from them. Generally, the staff here have less time in which to give you attention. On this ward, there is definitely not enough staff.

> 4. Here, the staff treat patients like incorrigible children. I have seen many more instances of patients being strapped down here than in any other place I've been. There is also more fighting and abusive language here.

> \* \* \* \* \* \*

> 7. My locker was changed two days ago, but I haven't received a key yet. As a result, I have to carry my toothbrush and valuables around with me. There is more theft at Lyons than at the other hospitals. On 53c west, I lost a shirt and pants, but I was sure the staff would do nothing about it, so I didn't report it.

> 8. I wanted to write a letter, but when I asked, there was no stamp and no

place to mail it. They gave me a scrap of paper to write on, but no envelope. At other V.A. hospitals, there is a mail box right on the ward and pens, writing paper, stamps and envelopes are supplied to the patients for free.

Affidavit of Charles Gaffney, filed July 16, 1980, ¶¶ 1–4, 7 & 8.

In addition to the affidavits submitted, the plaintiffs have referred the Court to several studies which reveal significant differences between Lyons and other V.A. hospitals. The most important of these was prepared by the V.A. and submitted to the Senate Committee of Veterans' Affairs as a statistical report on V.A. activities. *Veterans' Administration Activities* (Fourth Quarter of Fiscal Year 1979 and cumulative), Senate Committee Print No. 19, 96th Cong., 1st Sess. (1979). The following chart can be derived from Tables 1A and 2A of that report:

| Facility | Hospital in-patient Full Time Equivalent Employment | Admissions (10/78-9/79) Hospital-bed Section | | Average Daily Census (10/78-9/79) Hospital-bed Section | |
|---|---|---|---|---|---|
| | | Total | Psychiatric | Total | Psychiatric |
| Lyons (NJ) | 1,497 | 2,974 | 2,128 | 1,039 | 577 |
| East Orange (N.J.) | 1,722 | 15,459 | 1,204 | 780 | 100 |
| Birmingham (Ala.) | 936 | 12,846 | 0 | 293 | 0 |
| Palo Alto (Cal.) | 2,023 | 12,022 | 3,923 | 1,019 | 789 |
| All V.A. Hospitals (Totals) | 142,027 | 1,162,566 | 159,771 | 69,821 | 21,633 |

This chart facilitates comparison between Lyons and East Orange, the only other V.A. hospital in New Jersey; Lyons and Birmingham, Alabama, a V.A. hospital without any psychiatric in–patients; Lyons and Palo Alto, California, a V.A. hospital that, according to the plaintiffs, is somewhat similar to Lyons because it is undergoing a transition from a purely psychiatric hospital to a general hospital; and Lyons and the national V.A. totals in lieu of comparison to each individual hospital in the V.A. system.

It can readily be derived from the chart that Lyons has a lower ratio of full time equivalent employment to average daily census of all patients than any of the other entries on the chart. The ratio at Lyons reduces to 1.44. The ratio in East Orange reduces to 2.21; at Birmingham to 3.19; at Palo Alto to 1.99; and nationally to 2.03. It seems clear then that Lyons has considerably fewer staff per in–patient than is the norm at V.A. hospitals. The inference can certainly be drawn from this fact that an in–patient at Lyons gets less individualized attention than patients at other V.A. hospitals. It might also be inferred that, due to the lesser number of staff, conditions at Lyons are less pleasant, and fewer privileges are extended, than at other V.A. hospitals. This may be inferred for summary judgment purposes because common experience amply demonstrates that cut–backs in services generally accompany reduced staffing levels. The statistics, at a minimum, lend support to the statements made in the affidavits drawing an unfavorable comparison between care at Lyons and care at other V.A. hospitals.

In addition, the plaintiffs have requested that I defer judgment on this claim pursuant to Fed.R.Civ.P. 56(f) in order to permit them more time to assemble comparative

data between Lyons and other V.A. hospitals. That rule authorizes the court to defer decision on a motion for summary judgment when it appears that in fairness a party opposing the motion is entitled to more time in which to gather necessary proofs. I understand the plaintiffs' desire to try to obtain better proofs in regard to this comparison. Nevertheless, I believe that the present state of the proofs is generally sufficient, when all inferences are drawn in favor of the plaintiffs, to establish the first of plaintiffs' two basic contentions on its equal protection claim for the purposes of a summary judgment motion. That is to say, when every inference is drawn in favor of the plaintiffs the proofs demonstrate that patients are treated in a substantially different manner at Lyons from the way that patients are treated at other V.A. hospitals. When I say that they are treated differently I am not referring to the substance of their medical or psychiatric treatment, I am referring to how they are treated as human beings. Another way of phrasing it might be to say that patients at Lyons receive fewer perquisites than patients elsewhere in the V.A. system. Having reached this factual conclusion, it is necessary to address the legal question as to whether the defendants have a constitutionally sufficient reason for this difference in treatment.

As I have previously stated, I will analyze this question initially by applying the rational basis test. The Third Circuit has recently restated the guideposts of this standard:

> ... [W]e may not demand perfection, *Phillips Chemical Co. v. Dumas Independent School District*, 361 U.S. 376, 385 [80 S.Ct. 474, 480, 4 L.Ed.2d 384] (1960), or "mathematical nicety," *Dandridge v. Williams*, 397 U.S. 471, 485 [90 S.Ct. 1153, 1161, 25 L.Ed.2d 491] (1970) (quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369] (1911)). All we can do is determine whether the provision is rationally related to achieving a legitimate state objective. *Vance v. Bradley*, 440 U.S. [93] at 97 [99 S.Ct. 939 at 943, 59 L.Ed.2d 171] [(1979)].

*Malmed v. Thornburgh*, 621 F.2d 565 (3d Cir. 1980). There is authority that suggests that when public welfare legislation is involved, as in the present case involving veterans' benefits, courts should apply a somewhat tougher standard of rational basis review than in other sorts of equal protection cases. *See United States Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); Tribe, *American Constitutional Law* 1117 (1978) (§ 16–48, "Welfare Distribution with an Even Hand–Criteria of Eligibility"). The Third Circuit has recently applied such a toughened standard, which was described as "close scrutiny of rationality," in striking down a Pennsylvania Department of Public Welfare regulation that denied benefits to certain blind, aged, or disabled claimants. *Medora v. Colautti*, 602 F.2d 1149 (3d Cir. 1979). A different panel of the Third Circuit, however, recently suggested that the *Medora* case should not be broadly construed and upheld the constitutionality of Pennsylvania regulations affecting the administration of the Aid to Families with Dependent Children employing what it described as a "relaxed standard of scrutiny" in seeking a rational basis upon which to uphold the challenged regulations. *Jackson v. O'Bannon*, 633 F.2d 329 (3d Cir. 1980). Because I believe that the plaintiffs have shown, for purposes of summary judgment, that the defendants do not have a rational basis for distinguishing between Lyons patients and other V.A. hospital patients through the application of the more relaxed rational basis test, it is unnecessary for me to determine at this time whether a "close scrutiny of rationality" is more properly applied to the present case.

Whatever the appropriate standard, the present case remains an unusual equal protection case insofar as it raises issues not relating to inequalities created by legislative acts or by administrative rule–making but rather to unequal administration of benefits such that individuals who are ostensibly entitled to receive identical benefits under the law are in fact receiving substantially different treatment depending

upon where they go to receive these benefits. There is no question in the present case that the plaintiffs are entitled to receive the benefits of V.A. hospital care, that fact is apparent from their very admission to and presence at Lyons. This fact alone distinguishes it from virtually all other equal protection cases, including the Supreme Court's most recent equal protection decision in *Harris v. McRae*, —— U.S. ——, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), and all of the equal protection cases cited in the preceding paragraph. It is the plaintiffs' contention that if two veterans with identical medical or psychiatric conditions and identical entitlement to V.A. care pursuant to statutes and V.A. regulations were admitted to different V.A. hospitals for care, the one admitted to Lyons would be treated more poorly than the one admitted elsewhere. It should be emphasized, once again, that in speaking of treatment I am not referring to differences that might arise as a result of differing approaches on the part of treating physicians. The plaintiffs in this suit contend that Lyons patients are accorded substantially less respect from Lyons staff than patients are accorded in other veterans' hospitals, that Lyons patients are accorded substantially less privacy in their persons and belongings, that they are accorded substantially less freedom to communicate with counsel, other patients, friends, and the outside world, that they are, in sum, afforded considerably less humanity and freedom than patients in other V.A. hospitals. Neither the parties' nor my own research has revealed an equal protection case that discusses this sort of problem, where persons equally entitled to benefits receive substantially different benefits from the same governmental agency. This appears, then, to be a question of first impression.

After my initial review of the present motions I requested the parties to submit a brief answering several questions. One of these questions was "How do conditions at Lyons compare with those at Veterans' Hospitals that are strictly medical facilities, that is, are the rules and regulations the same and are any other conditions related to plaintiffs' complaints the same?" The defendants submitted the following response that I am reprinting here in full:

All VA medical centers, whether or not they provide extensive psychiatric care, operate under a basic set of uniform instructions and policies which emanate from the Central Office of the VA. In addition, instructions and policies peculiar to providing psychiatric care also issue from the Central Office of the VA. These instructions are issued, *inter alia*, in the form of manuals, letters and circulars issued by the Administrator of Veterans Affairs, the Chief Medical Director, and Assistant Chief Medical Directors who head the various services of the VA's Department of Medicine and Surgery. Although all VA medical centers are equipped to handle psychiatric care at least on an emergency basis, some VA medical centers do not have the resources for long term inpatient psychiatric care. Only at such facilities, would those instructions and policies emanating from the Central Office of the Veterans Administration peculiar to the treatment of psychiatric patients not be in effect.

Within the boundaries of the instructions emanating from the Central Office of the Veterans Administration, each medical center director is afforded a measure of discretion in setting local policies for the operation of the VA medical center which he or she manages.

Thus, conditions are generally the same for all psychiatric or medical patients similarly situated within the VA system except to the limited extent that the discretion exercised by local VA Medical Center Directors creates minor variations and to the extent specific policies peculiar to psychiatric treatment are not applicable to strictly medical patients.

In short, the V.A.'s position is that the type of disparate treatment that the plaintiffs have alleged does not exist. In view of this position, it is not surprising that the defendants have not yet suggested any rational reasons as to why conditions at Lyons are substantially different from conditions else-

where in the V.A. system, a fact that I have previously concluded to be demonstrated by the plaintiffs for purposes of opposing summary judgment. Since no reasons have been offered for the difference in treatment it is impossible for me to evaluate their sufficiency. Ordinarily, this conclusion would end the discussion. I have noted, however, that at several points in their affidavits and briefs relating to other aspects of the present motion the defendants have stated that lack of sufficient personnel is the reason that Lyons patients may not be afforded such services as escorts to religious services held on the hospital grounds. I believe it appropriate, then, to consider whether lack of sufficient personnel at Lyons is a sufficient rational basis upon which to justify substantial differences of treatment between patients at Lyons and other V.A. hospitals.

In the abstract, lack of personnel may appear to be a sufficient basis for different treatment. It is certainly rational to provide greater service when more personnel is available and to provide lesser service where less personnel is available. This is rational because it makes sense neither to let many employees work at tasks that fewer are able to accomplish nor to make few employees work at tasks that are properly handled by a greater number of employees. Were Lyons the only V.A. hospital in the country this might well be a sufficient explanation for the conditions at Lyons under the well established principle that when a government attempts to remedy a problem it need not remedy the entire problem, nor act in accordance with any particular school of thought, in order to act constitutionally. *See, e. g., Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). But Lyons is not the only V.A. hospital. Indeed, it is part of the plaintiffs' contention that they are being denied equal protection because of the insufficient staff at Lyons. It seems obvious that the inequality itself cannot serve as a sufficient justification for that inequality. The Constitution requires that the inequality be explained in some other way, through a rational explanation and not through a tautology. But

even if the staffing situation at Lyons is not seen as part of the claimed equal protection violation, it fails to provide a rational basis for the substantial differences between Lyons and other V.A. hospitals.

In *F. S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920), the Supreme Court stated the core of the constitutional concept of equal protection:

> [T]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.

I believe that in a case like the present one this core concept requires the defendants to come forward with a rational basis that has a fair and substantial relation to the object of veterans' benefit legislation and V.A. regulations. It is not sufficient for them to come forward with an explanation, such as insufficient staffing, that is peculiar to Lyons. The two veterans of my earlier hypothetical who have identical medical or psychiatric conditions and who have been found by the V.A. to have identical entitlement to V.A. hospital care are two people who are similarly circumstanced and who must be treated alike by the V.A. The V.A., in other words, violates equal protection if it permits two hospitals serving the same types of patients under the same statutes and regulations to provide substantially different treatment to those patients. Any substantial differences in treatment cannot be justified solely by resort to local conditions, but must be rationally related to the object of the legislation and regulations being administered.

I wish to emphasize that in so holding I am not creating a substantive right to any particular type of treatment under the concept of equal protection. I am simply holding the V.A. to a standard of treatment that it has itself created through the operation of its hospitals. Nor am I requiring perfect equality or mathematical nicety. It is only when substantial differences in treatment exist that equal protection is violated.

Admittedly, "substantial differences in treatment" is a vague phrase. I believe, however, that the concept can be pinned down sufficiently through a discussion of several of the issues raised on the present motion. To begin with, I believe that if, after the trial, it appears that conditions at Lyons compare with conditions at other V.A. hospitals in the manner described by the defendants in their response to my question, reprinted *supra*, then equal protection would not be denied to these plaintiffs. The limited measure of discretion described in the defendants' response would not seem to permit substantial differences but only minor ones. Obviously no bright line can be drawn between minor differences and substantial differences, but if we consider the plaintiffs' claims, in particular some of the ones that the defendants seek to strike through the present motion, we can put some flesh onto the bare bones of the words.

Among the seventeen aspects of this case that the defendants seek to have stricken on this motion, see footnote 1, *supra*, is "The claims concerning food served at Lyons." The plaintiffs have stated in affidavits that they have been subjected to, and expected to eat unwholesome and aesthetically unattractive food. Thus far, they have not compared Lyons food with food elsewhere in the V.A. system. They have instead premised their right to better food on constitutional guarantees other than equal protection. The defendants also did not treat the food claim as an equal protection claim in their motion to dismiss. I believe, however, that it can properly be considered within the equal protection context. If the plaintiffs can demonstrate that the food served at other V.A. hospitals is of good quality while the food at Lyons is of poor quality, then they will have shown a substantial difference in treatment. If the V.A. can deliver a good quality food service at its other hospitals, it may not be able to show a rational basis for delivering a poor quality food service at Lyons. The plaintiffs' equal protection claim might, therefore, be sufficient to support the relief that they seek with regard to the food. The

defendants' motion in this regard will be denied, pursuant to Fed.R.Civ.P. 56(f), to give the plaintiffs the opportunity to develop this comparison that has not previously been addressed by the parties. Because I believe that the plaintiffs' equal protection claim might support the relief ·sought I do not believe it necessary to address the other issues raised in relation to the food at this time. Indeed, well–established principles of federal jurisprudence require federal courts to refrain from unnecessarily addressing constitutional issues. *See, e. g., New York Transit Authority v. Beazer*, 440 U.S. 568, 582 fn. 22, 99 S.Ct. 1355, 1364, 59 L.Ed.2d 587 (1979).

Most of the other aspects of the defendants' motion must also be denied under this equal protection analysis. The defendants seek to have "All claims concerning losses of patients' clothing or other possessions" stricken. In the affidavit of Charles Gaffney, the relevant portion of which is reprinted *supra*, it is stated that "There is more theft at Lyons than at the other [V.A.] hospitals [that I have been in]." Certainly a greater frequency of theft at Lyons than at other V.A. hospitals represents a substantial difference in treatment. Fear of theft, or freedom from that fear, can be a considerable factor in a patient's comfort in a hospital. This portion of the defendants' motion must, therefore, be denied.

Mr. Gaffney's affidavit also states that he has "seen many more instances of patients being strapped down [at Lyons] than at other [V.A. hospitals where he has] been." Certainly greater use of physical force constitutes a substantial difference in treatment of the most basic sort. Accordingly, that portion of the defendants' motion that seeks dismissal or summary judgment on "All allegations sounding in 'assault and battery'" must be denied.

For similar reasons the portion of the defendants' motion that seeks dismissal or summary judgment on "The allegations and claims concerning inadequate locker and storage space" must be denied. The plaintiffs have submitted affidavits stating that the locker and storage space that they are

given at Lyons is inadequate even to hold the hospital administration's recommended wardrobe for patients. Affidavit of Patrick Reilly, filed June 6, 1980, ¶ 2. Once again, the parties did not consider this question within the context of the equal protection claim. Since the principal thrust of the plaintiffs' case is that Lyons is not like other V.A. hospitals, I believe the plaintiffs should be given the opportunity, pursuant to Fed.R.Civ.P. 56(f), to develop comparative evidence. It may be that a substantial difference in treatment exists in this area as well, especially in view of the statement in Allen Whitlock's affidavit, reprinted *supra*, that at other V.A. hospitals patients are housed two to a room. Differences in the amount of personal clothing and property that a patient can securely store can have a substantial effect on a patient's feelings of selfhood, especially since some long–term V.A. patients may have no other home.

I will also deny the defendants' motion insofar as it seeks to strike "The allegations and claims concerning lack of outdoor exercise for patients on closed wards at Lyons." It should be obvious to anyone who has read the opinion this far that I am interested in seeing the parties develop the comparison between Lyons and other V.A. hospitals. It is a significant deprivation to be confined indoors day after day. If such a condition does not prevail at other V.A. hospital closed wards then there is a substantial difference in treatment.

In their response to the defendants' motion the plaintiffs have frequently argued that the defendants, by attempting to isolate and hold up to scrutiny discreet aspects of the plaintiffs' complaint, have failed to address the principal thrust of the complaint. The plaintiffs argue that although any one of their claims may seem trivial, the cumulative effect on the defendants' conduct towards them has the result of robbing them of dignity that patients at other V.A. hospitals are not robbed of. I agree with the plaintiffs' reading of the complaint, and that is why I have chosen to decide this case on an equal protection basis rather than addressing each of the multi-tude of constitutional issues raised in the briefs. It is my job to decide the motion in accordance with the law, it is not my job to render an advisory opinion on every constitutional issue that may be raised by the complaint or in the briefs. *See Rescue Army v. Municipal Court*, 331 U.S. 549, 568, 67 S.Ct. 1409, 1419, 91 L.Ed. 1666 (1947). Accordingly, because I believe that the development of the plaintiffs' equal protection claim may obviate the need to address their other constitutional claims, I will deny the remaining portions of the defendants' motion that seek dismissal of plaintiffs' constitutional theories other than equal protection. There will be time enough to reach these theories if the facts show that equal protection will not provide plaintiffs with the relief sought. At the present time, for summary judgment purposes, there is no need to do so. I will, however, explain my thinking as to how equal protection might obviate the need to consider those other matters.

Several of the items that the defendants seek to have stricken involve due process claims. In particular, the defendants seek dismissal or summary judgment as to "The claims concerning 'adverse entries' in plaintiffs' medical records," "The allegations of due process infringements attaching to the giving of passes to patients without releasing their driver's licenses," and "All claims based on restrictions placed on patients' funds which are in V.A. accounts." Basically the plaintiffs contend that they are denied due process at Lyons insofar as arbitrary actions on the part of the staff there place significant limitations upon their liberty. If similar limitations are not placed upon patients at other V.A. hospitals, or if such limitations are only placed upon patients after proceedings are held which do not take place at Lyons, then I believe that a substantial difference of treatment exists that may violate the equal protection guarantee.

The defendants also seek to strike "The Third Cause of Action, concerning religious freedom" and "The allegations and claims concerning Lyons' policy against permitting

patients to visit other patients on their wards." If conditions and policies relating to religious freedom and free association are different at other V.A. hospitals then there may never be any need for the court to address these First Amendment claims. I believe that these comparisons, along with the many others in this opinion, need to be developed by the parties.

The defendants also seek to dismiss the plaintiffs' Fourth Amendment claims "concerning routine sanitary searches at Lyons." From the record, I cannot determine whether searches of the sort that apparently occur at Lyons are routinely pursued at other institutions. This issue should be developed by the parties.

Two other of the plaintiffs' claims that the defendants seek to have stricken are "The Sixth Cause of Action concerning cruel and unusual punishment" and "The Ninth Cause of Action based upon a right to treatment." Comparison between Lyons and other V.A. hospitals may be particularly useful in regard to both of these claims. If there are substantial differences in the methods and types of discipline at Lyons and other hospitals equal protection may be violated. Similarly, and this is the one area that concerns medical treatment, if patients receive better medical care elsewhere in the V.A. system then there may be no need to ever address the right to treatment questions. That is to say that if the V.A. provides good quality medical care in its other hospitals but not at Lyons, as the plaintiffs contend, the equal protection guarantee may be all that is needed to provide the plaintiffs with the relief sought.

In sum, it is my view that the equal protection claim in this case is an extremely broad one, and that it may prove to be far–reaching enough to eliminate the necessity of the court ever addressing many of the constitutional theories of the case. The plaintiffs have provided the court with sufficient proofs, when every inference is drawn in their favor, to demonstrate for summary judgment purposes that a substantial difference in treatment exists between Lyons and other V.A. hospitals. On the present record no rational basis exists for these differences so the constitutional guarantee of equal protection appears to be violated for purposes of summary judgment. Accordingly, the parties have been directed to develop the equal protection aspects of the case and the court has refused, at this time, to address a variety of other constitutional issues. I will now turn to the single remaining portion of the defendants' motion.

IV. Plaintiffs' Standing to Challenge 38 C.F.R. § 1.218

The plaintiffs contend that 38 C.F.R. § 1.218 violates the First Amendment. That regulation provides in the challenged portions as follows:

(e) *Disturbances.* Conduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly is prohibited. In addition to measures designed to secure voluntary terminations of violations of this paragraph the head of the facility or his designee may cause the issuance of orders for persons who are creating a disturbance to depart the property. Failure to leave the premises when so ordered constitutes a further disturbance within the meaning of this rule, and the offender is subject to arrest and removal from the premises.

\*    \*    \*    \*    \*    \*

(i) *Distribution of handbills.* The distributing of materials such as pamphlets, handbills, and/or flyers, and the displaying of placards or posting of materials on bulletin boards or elsewhere on property is prohibited, except as authorized by the head of the facility or his designee or when such distributions or displays are

conducted as part of authorized Government activities.

\*     \*     \*     \*     \*     \*

(n) *Demonstrations.* (1) All visitors are expected to observe proper standards of decorum and decency while on Veterans Administration property. Toward this end, any service, ceremony, or demonstration, except as authorized by the head of the facility or his designee is prohibited.

(2) For the purpose of the prohibition expressed in this paragraph, unauthorized demonstrations or services shall be defined as, but not limited to, picketing, or similar conduct on Veterans Administration property; any oration or similar conduct to assembled groups of people, unless the oration is part of an authorized service; the display of placards, banners, or foreign flags on Veterans Administration property unless approved by the head of the facility or his designee; disorderly conduct such as fighting, threatening, violent or tumultuous behavior, unreasonable noise or coarse utterance, gesture or display or the use of abusive language to any person present; and partisan activities which may be described as commentary or action in support of, or in opposition to, or attempting to influence, any current policy of the Government of the United States, or any private group, association or enterprise.

The plaintiffs contend that these regulations unconstitutionally authorize prior restraints of speech and are in other manners facially overboard. The defendants' motion papers argue that the plaintiffs lack standing to make these contentions.

Standing is a jurisprudential doctrine with its roots in the "case or controversy" requirement of Article III of the Constitution. In *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), the Supreme Court summarized the standing requirements that a litigant must meet in order to pursue its claims in a federal court. According to the decision,

The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions," *Baker v. Carr*, 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962). As refined by subsequent reformulation, this requirement of a "personal stake" has come to be understood to require not only a "distinct and palpable injury," to the plaintiff, *Warth v. Seldin*, 422 U.S. 490, 501 [95 S.Ct. 2197, 2206, 45 L.Ed.2d 343] (1975), but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261 [97 S.Ct. 555, 561, 50 L.Ed.2d 450] (1977) (other citations omitted)

*Duke Power Co.*, 438 U.S. at 72, 98 S.Ct. at 2630. In reviewing the question of standing I have construed the complaint in favor of the plaintiffs and have accepted as true all of the facts alleged. I have also considered under the same standards the affidavits submitted to the court by the plaintiffs. *Warth v. Seldin*, 422 U.S. 490, 501–2, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975).

The proofs submitted by the plaintiffs include the following:

4. I have made some complaints about my own treatment and about the way other patients were treated at Lyons. Staff often tried to ignore me, but I was persistent. Staff also often discouraged me from complaining.

a. While on Ward 55, an aide overheard me talking on the phone about leaving Lyons. For that, my privileges were revoked.

b. In 1978, I complained about the failure of nurses to follow the doctor's order in timing my medications and for this a nurse cursed at me. When I brought this abusive language to the at-

tention of the head nurse, she told me that I was a "troublemaker" and she did not want to hear my side of the story.

c. While on Ward 1–B, I complained to a doctor about my treatment and what looked like excessive drugging of other patients. A nurse heard about this and had a psychiatrist come and examine me. She also wrote in my chart that I had threatened suicide; that statement was absolutely false. On the day that the psychiatrist was to see me, staff tried to take my privilege card, but I refused to give it to them. They would not let me leave the ward.

d. In 1978, I had to complain before they would give me Kosher food. Shortly afterwards, my privileges were revoked for "disrespect" to a nurse.

\* \* \* \* \* \*

f. That year, nurses and staff warned me several times to be "careful" about complaining. I understand that I was risking loss of privileges or other retaliation.

\* \* \* \* \* \*

5. People who complain at Lyons are subject to various forms of retaliation. Privileges are routinely revoked. Visitors may be called and told not to visit. Patients can be prevented from attending recreational activities, when they are on closed wards (or, like me, when their "open" wards have been locked). It must be kept in mind that these privileges are extremely valuable when you are on a closed ward–they may be your only chance to get off the ward.

\* \* \* \* \* \*

7. I know of about fifteen people who were locked up for long periods of time on closed wards. When I go to Lyons, I still see some of them being escorted by staff on the grounds. Usually, when these patients come over to speak with me, escorts prevent them from talking to me about certain things, like asking how these patients are being treated.

Affidavit of Allen Whitlock, filed June 6, 1980, ¶¶ 4, 5 & 7.

■ These statements, made by a member of the plaintiff class, establish standing to challenge 38 C.F.R. § 1.218(e). When accepted as true they demonstrate that he has been punished for statements made to staff at Lyons. He has been told that such statements violate rules and it may certainly be inferred that the staff was referring to the challenged regulation, which prohibits "loud, abusive, or otherwise improper language." The plaintiffs, therefore, have met the *Duke Power* requirements of a "personal stake" to challenge that portion of the regulation.

They have also established standing to challenge the remaining portions of the regulations. In an interrogatory response that has been incorporated into the affidavit of one of the named plaintiffs the following statement appears.

The various rules, policies and conditions set forth in the complaint and evidenced by the incidents detailed herein place all patients on notice that defendants or their staffs intend to learn of every expression of contact between a patient and the other staff, patients or outsiders. The cumulative effect is to chill or discourage expression or association for fear of reprisals, loss, invasion of privacy or futility.

Incidents described hereinafter reinforce this repressive atmosphere. For example, mail addressed to Congressmen was sometimes inspected by staff, or opened, delayed, or otherwise investigated. The hospital newspaper was discontinued. Telephone calls to Congressmen were monitored by staff. Patients were questioned about the reasons for visits. Visiting attorneys themselves were questioned. Calls and visits were listened to. Staff were notified of incoming calls. Patients organizations were monitored or discouraged. Staff told patients they had no rights. Other such practices of surveillance and intimidation are recounted herein . . . .

Plaintiffs' response to the defendants' interrogatory No. 69, incorporated in affidavit of William Hilbert, filed June 6, 1980, ¶ 18. This statement establishes a "personal

stake" in activities regulated and, according to the plaintiffs, repressed pursuant to 38 C.F.R. § 1.218. Mr. Hilbert's reference to the hospital newsletter would seem to relate to § 1.218(i) and his reference to the monitoring of patients' organizations seems to relate to § 1.218(n). It may be inferred from this interrogatory response that Mr. Hilbert was personally involved in both the newspaper, either as a worker or a reader, and the patients' organizations, either as a leader or a follower. There is, therefore, no need to consider the arguments relating to the standing of the plaintiffs to assert the rights of third parties. Their personal statements demonstrate standing.

The defendants' motion to dismiss the plaintiffs' claims concerning 38 C.F.R. § 1.218 for lack of standing is therefore denied.

### V. Conclusion

The defendants' motion in this case has presented a variety of unusual, and in some cases novel, legal questions to the Court. In deciding the seventeen (17) aspects of the defendants' motion I have dismissed all of the plaintiffs' statutory claims for lack of subject matter jurisdiction due to the operation of 38 U.S.C. § 211(a). In all other respects the defendants' motion has been denied.

Counsel for the plaintiffs will submit an order in conformance with this Opinion, consented to as to form, within fifteen days.