818 F.2d 194
 In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.
Philip J. AGUIAR, et al., each of said plaintiffs
individually and as representative of all those
similarly situated, Plaintiffs-Appellants,
v.
UNITED STATES of America, et al., and other departments and
agencies of the United States Government, as their several
interests may appear, and successors to the above officials,
as necessary, Defendants-Appellees.
Dan FORD, and his wife, Christina Ford; individually, and
as members and representative of a class,
Plaintiffs-Appellants,
v.
UNITED STATES of America, et al., Defendants-Appellees.
Daniel C. BATTS, Plaintiff,
v.
UNITED STATES of America, et al., Defendants-Appellees.
LOUGHERY, et al., Plaintiffs-Appellants,
v.
UNITED STATES of America, et al., Defendants.
 Nos. 1077, 1078, 1079, Dockets 85-6091, 85-6093 and 85-6095.
 United States Court of Appeals,
Second Circuit.
 Argued April 10, 1986.
Decided April 21, 1987.
 
 Joan M. Bernott, Sp. Litigation Counsel, Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., Arvin Maskin, U.S. Atty., Washington, D.C., and Raymond J. Dearie, U.S. Atty., E.D.N.Y., of counsel), for defendant-appellee U.S.
 Neil R. Peterson, Philadelphia, Pa. (Gene Locks, Greitzer and Locks, Philadelphia, Pa., of counsel), David W. Moyer and Philip E. Brown (Hoberg, Finger, Brown, Cox & Molligan, San Francisco, Cal., of counsel), Thomas Henderson, Pittsburgh, Pa. (Henderson & Goldberg, Pittsburgh, Pa., of counsel), David J. Dean, Carle Place, N.Y. (Dean, Falanga & Rose, Carle Place, N.Y., of counsel), John O'Quinn, Houston, Texas (O'Quinn, Hagan & Whitman, Houston, Texas, of counsel), Stanley M. Chesley, Cincinnati, Ohio (Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, of counsel), Newton B. Schwartz, Houston, Tex., Stephen J. Schlegel, Chicago, Ill. (Schlegel & Trafelet, Chicago, Ill., of counsel), for plaintiffs-appellants.
 Before VAN GRAAFEILAND, WINTER and MINER, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Our discussion of the background and procedural history of this litigation appears in Judge Winter's lead opinion, 818 F.2d 145.
 
 
 2
 In addition to the numerous individual claims spawned by Agent Orange, two large class actions were brought. The first, against the chemical companies, was settled. The second, against the United States, was dismissed, and the dismissal is being challenged on this appeal.
 
 
 3
 At the outset of this litigation, ingenious counsel, concerned that they might not be able to state a claim for relief under the Federal Tort Claims Act, 28 U.S.C. Sec. 2671 et seq. ("FTCA"), attempted to invoke federal court jurisdiction by also alleging constitutional and civil rights violations, mandamus and equitable jurisdiction. These additional grounds for the exercise of jurisdiction were properly rejected by the district court. Ryan v. Cleland, 531 F.Supp. 724, 730-33 (E.D.N.Y.1982); see Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). They have not been asserted on this appeal. Appellants' claims now before us are predicated solely on the provisions of the FTCA.
 
 
 4
 Because the case comes to us in a rather peculiar posture, familiarity with the administrative claim requirements of the FTCA is necessary for an understanding of the discussion that follows. The administrative claim requirements of the FTCA, 28 U.S.C. Sec. 2675(a), prohibit an action seeking money damages from the United States for personal injury or death unless the claimant has first presented the claim to the appropriate federal agency and it has been denied. Interpretative regulations provide that the claim must be presented in writing by the injured person or his duly authorized agent or legal representative and must be for "money damages in a sum certain." 28 C.F.R. Secs. 14.2(a), 14.3(b). Section 2401(b) of 28 U.S.C. sets up a two-year limitation period for the filing of claims.
 
 
 5
 Shortly after the original class action was brought in 1979, the plaintiffs moved to be relieved of the requirement of filing separate claims in order to protect their individual rights. Then District Judge George Pratt, to whom the case was assigned, correctly held that the filing requirements were jurisdictional in nature and that the court could not order the Government to ignore the statutory requirements. In re "Agent Orange" Product Liability Litigation, 506 F.Supp. 757, 760-61 (E.D.N.Y.1980). As might have been expected, plaintiffs' attorneys thereafter concentrated most of their fire on the chemical companies.
 
 
 6
 However, after the class action against the chemical companies was settled in 1984, an "Eighth Amended Complaint" was filed against the Government and certain Government officials on behalf of the above-captioned "Aguiar" group of plaintiffs and Dan and Christina Ford. The complaint identified a proposed class as:
 
 
 7
 persons who were in the United States, New Zealand or Australian Armed Forces and assigned to Vietnam during the hostilities from 1961 to 1972, who claim injury from exposure to Agent Orange (and other phenoxy herbicides) and their spouses, parents and children born before September 1, 1984 (or such other later date as may be fixed by this Court) who claim direct, indirect, independent or derivative injury as a result of such exposure.
 
 
 8
 In a Memorandum Order and Judgment, 603 F.Supp. 239, Chief Judge Weinstein, who succeeded Judge Pratt, denied the plaintiffs' motion for class certification, id. at 242, and granted the Government's motion for summary judgment against "all claims direct or derivable of the veterans and their wives and against all of the children's derivative claims" and dismissed the direct claims of the children without prejudice. Id. at 248.
 
 
 9
 Three notices of appeal then were filed. The caption of the first contained the names of all the above-captioned plaintiffs-appellants. It was filed by the "Agent Orange Plaintiffs' Management Committee", which did not identify itself as representing any of the individual plaintiffs-appellants in this action against the Government.[1] The caption of the second contained only the names of the first group of plaintiffs-appellants above named, beginning with "Aguiar" and ending with "Clay", and was filed by the firm of Hoberg, Finger, Brown, Cox & Molligan as "Attorneys for Plaintiffs". The third caption contained only the names of the cases referred to in the district court's opinion as having been "previously dismissed", beginning with "Loughery v. United States" and concluding with "Xirau v. Dow Chemical Co.", 603 F.Supp. at 248-49. This notice of appeal also was filed by the Agent Orange Plaintiffs' Management Committee, which did not describe itself as the attorney for any of the plaintiffs in that group of cases.
 
 
 10
 The Government contends at the outset that the appeal should be dismissed as academic because class certification was denied in the instant action and there is no individual appellant. "Instead", the Government argues, "this appeal is brought by Committee counsel acting exclusively as a pro bono fiduciary for a decidedly uncertified class, many or most of whose numbers disavow the complaint." This, we think, misstates the legal issue which the Management Committee's unusual procedure has created. The denial of class certification does not preclude individual plaintiffs properly before the court from pressing their own claims, 7B C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1795, at 322. These may include an appellate challenge to the denial of class certification. United Airlines, Inc. v. McDonald, 432 U.S. 385, 393, 97 S.Ct. 2464, 2469, 53 L.Ed.2d 423 (1977). The question, then, is not whether the individual party-plaintiffs could make an effective decision to appeal, but whether the Management Committee had the authority to make this decision for them. See Massachusetts v. Feeney, 429 U.S. 66, 97 S.Ct. 345, 50 L.Ed.2d 224 (1976) (per curiam). Insofar as the first and third notices of appeal are concerned, we think that the question must be answered in the negative. The Agent Orange Plaintiffs' Management Committee claims to represent a class, an uncertified class at that, not any individual plaintiffs.
 
 
 11
 The above described second notice of appeal presents a stronger case for appealability, since it was filed by attorneys claiming to represent all of the individual plaintiffs in the Aguiar group. However, counsel for the Management Committee proceeded to muddy the waters with regard to this appeal with a letter to the Court Clerk in which he stated:
 
 
 12
 Mr. Moyer and I, on behalf of the AOPMC, represent the class, as opposed to any particular individuals on this appeal. The only exception is that Mr. Moyer's firm represents additionally and individually all the plaintiffs in the Aguiar matter (82-780). However, only class issues are here being raised on behalf of those plaintiffs.
 
 
 13
 After some intervening explanatory paragraphs, the letter concluded:This explains why we are withdrawing the third issue pertaining to wives' independent claims for miscarriages. The District Court's determination in that regard could not apply to the class and any appeal thereof would have to be in individual cases in which we have no authorization to proceed and no attorney-client relationship.
 
 
 14
 If the foregoing statements are correct--and it does appear that the arguments in appellants' briefs are confined to class issues rather than those of any individual plaintiff--this appeal can be quickly disposed of. It is well established that neither the district court nor this Court has jurisdiction over a Federal Tort Claims class action where, as here, the administrative prerequisites of suit have not been satisfied by or on behalf of each individual claimant. See, e.g., Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); Lunsford v. United States, 570 F.2d 221, 224-27 (8th Cir.1977); Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers, 520 F.2d 11, 23-25 (3d Cir.1975); Luria v. Civil Aeronautics Board, 473 F.Supp. 242 (S.D.N.Y.1979); Kantor v. Kahn, 463 F.Supp. 1160, 1162-64 (S.D.N.Y.1979); Founding Church of Scientology v. Director, FBI, 459 F.Supp. 748, 754-56 (D.D.C.1978).
 
 
 15
 Assuming that the appeals herein were intended to, and did, include the individual party-plaintiffs' claims, we nonetheless would have no jurisdiction to consider the claims of those plaintiffs who had not met the administrative prerequisites of suit. Although we might remand those cases to the district court for a determination as to which, if any, of the plaintiffs in this group had complied with the FTCA's administrative claim requirements, we see no purpose in doing this if the district court acted correctly in dismissing the cases on the merits. We believe that it did.
 
 
 16
 In an effort to allege a viable cause of action, plaintiffs' counsel assign their claims of government wrongdoing to three separate time periods--pre-induction, in-service, and post-service. The pre-induction claims are based largely upon an alleged failure to warn of the Agent Orange health hazards to which the inductees would be exposed. The in-service claims deal with the allegedly negligent acts that led to and accompanied the actual exposure. The post-service allegations deal with the Government's failure to warn plaintiffs of the health hazards they faced and to treat or monitor the treatment for plaintiffs' Agent Orange-related illnesses. All of these claims were summarily rejected by the district court. 603 F.Supp. at 242-45.
 
 
 17
 The ultimate policy decision to use Agent Orange was made by President Kennedy. 603 F.Supp. at 244. He, of course, was Commander in Chief of the Armed Forces with "decision-making responsibility in the area of military operations." DaCosta v. Laird, 471 F.2d 1146, 1154 (2d Cir.1973). However, in making decisions of this nature, the President does not act alone. Article I, section 8 of the Constitution empowers Congress to "raise and support Armies" and to "make Rules for the Government and Regulation of the land and naval Forces." See Rostker v. Goldberg, 453 U.S. 57, 59, 101 S.Ct. 2646, 2649, 69 L.Ed.2d 478 (1981). Pursuant to that authority, Congress has designated the Department of Defense as an Executive Department of the United States, 10 U.S.C. Sec. 131, and has directed the Secretary of Defense, with the assistance of the Joint Chiefs of Staff and advisory committees and panels, to make recommendations and reports to Congress concerning existing and proposed weapon systems, 10 U.S.C. Secs. 139, 141, 174. Congress also has created the office of Under Secretary of Defense for Research and Engineering, whose duties include supervising all research and engineering activities in the Department of Defense and advising the Secretary on scientific and technical matters, 10 U.S.C. Sec. 135. Absent a substantial constitutional issue, the wisdom of the decisions made by these concurrent branches of the Government should not be subject to judicial review.Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.
 
 
 18
 Chappell v. Wallace, supra, 462 U.S. at 301, 103 S.Ct. at 2366, quoting Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953).
 
 
 19
 In Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973), in which the Court reversed a Circuit Court order directing a district court to examine the "pattern of training, weaponry and orders in the Ohio National Guard", id. at 4, 93 S.Ct. at 2442-43, Chief Justice Burger said:
 
 
 20
 It would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible--as the Judicial Branch is not--to the electoral process. Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches. The ultimate responsibility for these decisions is appropriately vested in branches of the government which are periodically subject to electoral accountability. It is this power of oversight and control of military force by elected representatives and officials which underlies our entire constitutional system; the majority opinion of the Court of Appeals failed to give appropriate weight to this separation of powers.
 
 
 21
 Id. at 10-11, 93 S.Ct. at 2445-46.
 
 
 22
 Two well-established doctrines make the foregoing principles of restraint peculiarly applicable to the instant FTCA actions, which ask the judiciary to pass judgment upon the discretionary military decisions involving Agent Orange. The first of these is the so-called "discretionary function" exception to the Government's waiver of immunity under the FTCA, 28 U.S.C. Sec. 2680(a), which we discuss in the Hogan v. Dow Chemical opinion, 818 F.2d 210, filed herewith. There, we hold that the Government was performing a discretionary function while field-testing Agent Orange in Hawaii. The second is the so-called "Feres doctrine", originating in the seminal case of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which prohibits the judiciary from imposing liability upon the United States for injuries to servicemen that "arise out of or are in the course of activity incident to service." Id. at 146, 71 S.Ct. at 159. There is little difference between these doctrines as they relate to the facts of the instant case. Both apply to discretionary military decisions. Perkins v. Rumsfeld, 577 F.2d 366, 368 (6th Cir.1978); Builders Corp. of America v. United States, 320 F.2d 425 (9th Cir.1963), cert. denied, 376 U.S. 906, 84 S.Ct. 660, 11 L.Ed.2d 606 (1964). Both preclude judicial "second-guessing" in FTCA litigation of discretionary legislative and executive decisions such as those that were made concerning Agent Orange. See United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984) (the discretionary function exception) and United States v. Shearer, 473 U.S. 52, 57-59, 105 S.Ct. 3039, 3043-44, 87 L.Ed.2d 38 (1985) (the Feres doctrine).
 
 
 23
 Appellants have concentrated their attack on Feres which, they say, consists of "perversely overstretched trappings of sovereign immunity", "warped logic", and "balderdash". Confronted with the affirmation of the Feres holding in United States v. Shearer, supra, which followed the filing of appellants' original brief, appellants assert in their reply brief that Chief Justice Burger, who wrote Shearer, "rambled into Feres as dictum." Although Feres has not been without its properly less caustic critics, see, e.g., Bozeman v. United States, 780 F.2d 198, 200 (2d Cir.1985), it remains the law of the land and is binding on this Court. Id. at 202. See also Chappell v. Wallace, supra, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586, and Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 673-74, 97 S.Ct. 2054, 2058-59, 52 L.Ed.2d 665 (1977).
 
 
 24
 The recovery which the veterans seek for pre-induction negligence is dependent upon and inseparably intertwined with the injuries they allegedly sustained while in service. In a situation such as this, overwhelming authority holds that Feres bars recovery. See, e.g., Healy v. United States, 192 F.Supp. 325 (S.D.N.Y.), aff'd on opinion below, 295 F.2d 958 (2d Cir.1961); Satterfield v. United States, 788 F.2d 395, 399 n. 3 (6th Cir.1986); Joseph v. United States, 505 F.2d 525 (7th Cir.1974); Glorioso v. United States, 331 F.Supp. 1 (N.D.Miss.1971); Redmond v. United States, 331 F.Supp. 1222 (N.D.Ill.1971).
 
 
 25
 Application of the discretionary function rule leads ineluctably to the same result. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the leading case in this field, involved, among other things, a failure to warn. Id. at 42, 46-47, 73 S.Ct. at 971, 973-74. Lower courts which follow Dalehite have reached the same result. See Ford v. American Motors Corp., 770 F.2d 465 (5th Cir.1985); Cisco v. United States, 768 F.2d 788, 789 (7th Cir.1985); Begay v. United States, 768 F.2d 1059, 1066 (9th Cir.1985); Shuman v. United States, 765 F.2d 283, 291 (1st Cir.1985); General Public Utilities Corp. v. United States, 745 F.2d 239, 243, 245 (3d Cir.1984), cert. denied, 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985); Green v. United States, 629 F.2d 581, 585-86 (9th Cir.1980).
 
 
 26
 If the Feres doctrine is to have any meaning at all, the claim for in-service injuries is a classic case for its application. At issue is a decision of the veterans' highest military superiors that was designed to help the veterans in fighting the armed conflict in which they were engaged. "Here, the parties do not dispute that the government's motives in using Agent Orange in southeast Asia were valid military objectives: defoliate jungle growth to deprive enemy forces of ground cover and destroy enemy crops to restrict enemy's food supplies." 506 F.Supp. at 779; see also 603 F.Supp. at 244. We find no merit whatever in appellants' argument that the Government should be estopped from relying on Feres because, in subsequently opposing certain veterans' claims for benefits, the Government argued that their injuries were not service related, while it contends here that the same injuries were "incident to service." This is a distortion of the Government's position, which is that, if the veterans' injuries were caused by exposure to Agent Orange, a contention which the Government consistently has rejected, they were "incident to service". See also Henninger v. United States, 473 F.2d 814, 816 (9th Cir.), cert. denied, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973), regarding the inapplicability of the doctrine of estoppel in FTCA cases.
 
 
 27
 In Dalehite v. United States, supra, 346 U.S. at 37, 73 S.Ct. at 969, the Court said, "That the cabinet-level decision to institute the fertilizer export program was a discretionary act is not seriously disputed." The same statement may be made with regard to Agent Orange. The discretionary function exception clearly is applicable to the veterans' in-service injuries.
 
 
 28
 We agree with both Judge Pratt and Chief Judge Weinstein that the veterans' claims for post-service injuries are inseparably entwined with and directly related to their military service. See 506 F.Supp. at 779 and 603 F.Supp. at 244-45. The majority of other Circuits would rule similarly. See, e.g., Heilman v. United States, 731 F.2d 1104, 1108 (3d Cir.1984); Gaspard v. United States, 713 F.2d 1097, 1100-01 (5th Cir.1983), cert. denied, 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984); Lombard v. United States, 690 F.2d 215, 220-23 (D.C.Cir.1982), cert. denied, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983); Laswell v. Brown, 683 F.2d 261, 264-67 (8th Cir.1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983). See also Kosak v. United States, 465 U.S. 848, 854, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984).
 
 
 29
 We are not persuaded by plaintiffs' attempts to frame a theory of independent post-service wrongdoing to bring their claims within the ambit of United States v. Brown, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), and cases such as Broudy v. United States, 661 F.2d 125 (9th Cir.1981), and Stanley v. United States, 786 F.2d 1490 (11th Cir.), cert. granted, --- U.S. ----, 107 S.Ct. 642, 93 L.Ed.2d 699 (1986), which follow Brown. The district court did not simply reject plaintiffs' 373-paragraph complaint as an inadequate pleading; the Government's motion was in the alternative, i.e., for dismissal or summary judgment, 603 F.Supp. at 241, and the district court granted summary judgment, id. at 248. If anything is clear after reviewing an appellate record of over 16,000 pages, reading hundreds of pages of briefs, and listening to two full days of oral argument, it is that the weight of present scientific evidence does not establish that Agent Orange injured military personnel in Vietnam. Plaintiffs cannot disguise this fact by what the district court termed " 'inventive presentation or artful pleading.' " 603 F.Supp. at 245.
 
 
 30
 The very paucity of proof concerning the possible deleterious effects of Agent Orange made the decision whether to issue a nationwide health warning even more clearly an exercise of discretion. The reasoning of the discretionary function cases cited in connection with our discussion of pre-induction failure to warn is equally applicable here. See In re Consolidated U.S. Atmospheric Testing Litigation, 616 F.Supp. 759, 774-77 (N.D.Cal.1985). In considering the discretionary function exception, we are not bound to apply common law tort rules concerning the duty to warn as they may differ from State to State. Since the discretionary function exception of the FTCA does not exist in private tort litigation, "state tort standards cannot adequately control those governmental decisions in which, to be effective, the decision-maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness." Hendry v. United States, 418 F.2d 774, 783 (2d Cir.1969). See Mitchell v. United States, 787 F.2d 466, 468 (9th Cir.1986).[2]
 
 CONCLUSION
 
 31
 Insofar as the appeals purport to be taken on behalf of a class, they are dismissed. Insofar as the appeals purport to be taken on behalf of individuals, the judgment appealed from is affirmed. No costs to the Government on the appeals.
 
 
 
 [1]
 The Agent Orange Plaintiffs' Management Committee is the successor to a committee appointed in 1980 to represent a tentatively certified plaintiffs' class in an action against the chemical companies. See In re "Agent Orange" Product Liability Litigation, supra, 506 F.Supp. at 788; 534 F.Supp. 1046, 1052-53; 611 F.Supp. 1452, 1454
 
 
 [2]
 Insofar as appellants' post-service claims allege failure of the Veterans Administration to provide adequate medical treatment, we agree with Judge Pratt that appellants seek precisely the type of judicial review that Congress, in enacting 38 U.S.C. Sec. 211(a), expressly prohibited. See Ryan v. Cleland, 531 F.Supp. 724, 731 (E.D.N.Y.1982). See also Pappanikoloaou v. Administrator of the Veterans Admin., 762 F.2d 8 (2d Cir.) (per curiam), cert. denied, --- U.S. ----, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985); Hartmann v. United States, 615 F.Supp. 446, 448-50 (E.D.N.Y.1985); H.R. No. 91-1166, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.Code Cong. & Ad.News 3723, 3729-31