**EASTERN PARALYZED VETERANS ASSOCIATION, INC., Plaintiff,**

v.

**VETERANS' ADMINISTRATION, Thomas K. Turnage, as Administrator of Veterans Affairs and Head of the Veterans' Administration, Ronald F. Lipp, as Director of the Castle Point Veterans' Administration Medical Center, C. Alex Alexander, as Chief of Staff of the Castle Point Veterans' Administration Medical Center, and Almira U. Yusi, as Chief, Spinal Cord Injury Service of the Castle Point Veterans' Administration Medical Center, Defendants.**

No. 89 Civ. 0315 (RJW).

United States District Court,
S.D. New York.

April 22, 1991.

540

Solomon & Fornari, P.C., New York City, for plaintiff; Richard M. Zuckerman, of counsel.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for defendants; Diana Hassel, Asst. U.S. Atty., of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Defendants Veterans' Administration, Thomas K. Turnage, Ronald F. Lipp, C. Alex Alexander, and Almira U. Yusi (collectively, the "VA") have moved, pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.[1] Plaintiff has moved for class certification. For the reasons that follow, defendants' motion to dismiss the complaint is denied, and plaintiff's motion for class certification is granted.

## BACKGROUND

In the instant action, plaintiff Eastern Paralyzed Veterans Association ("EPVA"), on behalf of spinal cord injured ("s.c.i.") patients at the Castle Point Veterans' Administration Medical Center ("Castle Point") located in Castle Point, New York, claims that certain actions and procedures of the VA have deprived the s.c.i. veterans at Castle Point of equal protection and due process of law in violation of the fifth and fourteenth amendments to the United States Constitution.[2]

Plaintiff alleges in its complaint that the s.c.i. veterans at Castle Point are subject to

---

**1.** Defendants also moved to dismiss portions of the complaint for lack of personal jurisdiction, failure to state a claim, and insufficiency of service of process, to the extent plaintiff asserted claims against the named defendants in their individual capacities or asserted tort claims. Subsequent submissions, however, have made it clear that plaintiff does not purport to assert such claims.

**2.** Plaintiff also asserts a pendent state law claim which, according to the Court's reading of the complaint, arises under the "Patients' Bill of Rights." The parties have not addressed this claim in their submissions.

substantially inferior medical care and conditions than are similarly situated veterans at other VA hospitals. In essence, EPVA claims that although defendants have recognized the general medical needs of s.c.i. patients as reflected in the types of programs and the level of care which the VA provides at other VA hospitals, they have failed to provide these programs and this level of care to the Castle Point s.c.i. veterans. Plaintiff does not purport to challenge the medical treatment of any particular class member. Its primary allegation is that the members of the proposed class are denied rights and benefits provided s.c.i. patients at other VA medical centers. No claim is made against any defendant in his or her individual capacity, nor are any tort claims asserted.

## DISCUSSION

### I. *Subject Matter Jurisdiction.*

■ Defendants first contend that the Court lacks jurisdiction to hear plaintiff's claims based upon 38 U.S.C. § 211(a), which bars judicial review of decisions of the Administrator as to "all questions of law and fact necessary to a decision by the Administrator under a law that affects the provisions of benefits ... to veterans...." 38 U.S.C. § 211(a) (as amended Pub.L. 100–687, Title I, § 101(a), 102 Stat. 4105) (1990 Supp.). The primary issue thus presented on the instant motion is whether section 211 operates to bar judicial review of a claim by a broad class of veterans that the level of treatment provided them is inferior, as a matter of general policy, to the treatment received by similarly situated veterans based upon an unreasonable or arbitrary distinction. Because the law in this area is unsettled, a fairly extensive discussion of the case law is necessary.

Section 211(a) is generally considered to bar judicial review of decisions of the VA, subject to certain specified exceptions.

*E.g., Hartmann v. United States,* 615 F.Supp. 446, 448 (E.D.N.Y.1985) (two exceptions to jurisdictional restriction of section 211 have been articulated); *Ryan v. Cleland,* 531 F.Supp. 724, 729 (E.D.N.Y. 1982) (unless complaint falls within one of the narrow exceptions to the broad prohibition of section 211, the court lacks jurisdiction); *Doyle v. Dep't of Veterans Affairs,* No. 1:90–CV–272, slip op., 1990 WL 294247 (W.D.Mich. November 30, 1990) (available on Lexis at 1990 U.S.Dist. LEXIS 16366) (statute precludes review with two exceptions).

In *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), the Supreme Court articulated the first of these "exceptions"[3] to the jurisdictional bar, holding that section 211(a) does not preclude judicial review of constitutional challenges to veterans' benefits legislation. Specifically, the *Johnson* Court held that judicial review was appropriate in the case of a class action by veterans challenging 38 U.S.C. §§ 101(21), 1652(a)(1) and 1661(a) as violative of the First and Fifth Amendments. In support of its holding, the Court noted that neither the language of the statute itself nor the legislative history evidenced "a congressional intention to bar judicial review even of constitutional questions." *Id.* at 368, 94 S.Ct. at 1166.

Examining the legislative history of the 1970 amendment to section 211(a), the Court set out the two primary purposes of the no-review clause:

(1) to insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation, and (2) to insure that the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions will be adequately and uniformly made.

---

**3.** Although various courts have framed the issue in terms of narrow exceptions to a broad ban on review, the Supreme Court has consistently approached issues of jurisdiction under section 211 from the premise that there exists a "strong presumption that Congress intends judicial review of administrative action," *Traynor v. Tur-*

*nage,* 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988), and this presumption may be overcome only by a clear showing of contrary legislative intent. *Id.* Thus, the Supreme Court's analysis does not presume a broad ban and then an attempt to determine whether a particular case falls within a narrow exception.

*Id.* at 370, 94 S.Ct. at 1167 (footnotes omitted). According to the Court's analysis, these policies would not be undermined by allowing review of constitutional challenges to the legislation itself. In sum, the Court found that "neither the text nor the scant legislative history of § 211(a) provides the 'clear and convincing' evidence of congressional intent required by this Court before a statute will be construed to restrict access to judicial review." *Id.* at 373–74, 94 S.Ct. at 1169 (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967)).

Following the Supreme Court's decision in *Johnson*, lower courts applied, and in some instances extended, its rationale to allow judicial review of veterans' claims in certain instances. Some Courts held that section 211 did not bar due process challenges to the regulations and procedures of the VA. *See Devine v. Cleland*, 616 F.2d 1080 (9th Cir.1980) (review permitted in class action challenging absence of sufficient pretermination procedures in benefits legislation and regulations promulgated thereunder); *Plato v. Roudebush*, 397 F.Supp. 1295 (D.Md.1975) (same). Other courts determined that review was permitted over claims that the administrator had exceeded his authority to promulgate challenged regulations. *See Wayne State University v. Cleland*, 590 F.2d 627 (6th Cir. 1978) (review permitted over claim that administrator exceeded his authority in promulgating regulation); *Evergreen State College v. Cleland*, 621 F.2d 1002 (9th Cir. 1980) (same); *Maryland v. Cleland*, 621 F.2d 98 (4th Cir.1980) (same); *Merged Area X (Education) v. Cleland*, 604 F.2d 1075 (8th Cir.1979) (same).

The Second Circuit appears to have rejected, at least to some extent, both lines of cases outlined above. In *Pappanikoloaou v. Administrator of the Veterans Admin.*, 762 F.2d 8, 9 (2d Cir.1985) (per curiam), *cert. denied*, 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985), the Second Circuit stated:

> To the extent the complaint seeks damages for the VA's denial of due process in handling his claim, we agree with those circuits that have held that one

may not circumvent § 211(a) by seeking damages on a constitutional claim arising out of a denial of benefits. *See Anderson v. Veterans Administration*, 559 F.2d 935 (5th Cir.1977) (per curiam); *Ross v. United States*, 462 F.2d 618 (9th Cir.) (per curiam), *cert. denied*, 409 U.S. 984 [93 S.Ct. 326, 34 L.Ed.2d 249] ... (1972); *Milliken v. Gleason*, 332 F.2d 122 (1st Cir.1964) (per curiam), *cert. denied*, 379 U.S. 1002 [85 S.Ct. 723, 13 L.Ed.2d 703] ... (1965).

*Id.* The cited authorities had each held that due process challenges to the procedures followed by the VA in denying their individual benefits claims were unreviewable. Their holdings would appear on the surface to conflict with the reasoning of *Devine* and those cases holding that review was permissible where veterans challenged the VA's procedures in administering their claims.

The Court notes, however, that the *Anderson/Pappanikoloaou* line of cases is distinguishable from the *Devine/Roudebush* cases in a significant, and perhaps dispositive, respect. The former line of cases concern *individual* suits for *damages* arising directly out of denials of benefits. Review of the constitutional claims asserted in those cases would entail precisely the sort of inquiry that section 211(a), even interpreted in the narrowest sense, precludes. The latter cases, in contrast, concern broad challenges to the general notice or hearing procedures, or lack thereof, employed by the VA. This type of constitutional challenge does not implicate the concerns underlying section 211(a). *Cf. Doe v. Nelson*, 703 F.Supp. 713, 718–19 (N.D.Ill.1988) (review of immigration procedures permitted; important difference exists between challenge to adequacy of procedures used in an individual case, such as failure to provide a hearing, and across the board challenge to notice given a putative class of applicants).

The Second Circuit also rejected the *Wayne State* line of cases, in a decision which was subsequently reversed by the Supreme Court. *See Traynor v. Walters*, 791 F.2d 226, 230–31 (2d Cir.1986), *rev'd*

*sub nom. Traynor v. Turnage,* 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988).[4] In *Traynor v. Turnage,* the Supreme Court articulated the second of the recognized "exceptions" to the judicial review bar contained in section 211. The *Traynor* Court held "that the question whether a Veterans' Administration regulation violates the Rehabilitation Act is not foreclosed from judicial review by § 211(a)." *Traynor v. Turnage,* 485 U.S. 535, 545, 108 S.Ct. 1372, 1380, 99 L.Ed.2d 618 (1988).

In *Traynor,* the Supreme Court found that, as in *Johnson,*

> [t]he text and legislative history of § 211(a) ... provide no clear and convincing evidence of any congressional intent to preclude a suit claiming that § 504 of the Rehabilitation Act, a statute applicable to all federal agencies, has invalidated an otherwise valid regulation issued by the Veterans' Administration and purporting to have the force of law.

*Id.* at 543, 108 S.Ct. at 1379. Elaborating on the meaning of the language of section 211(a), the Court stated that that section "insulates from review decisions of law and fact 'under any law administered by the Veterans' Administration,' *that is, decisions made in interpreting or applying a particular provision of that statute to a particular set of facts.*" *Id.* (emphasis supplied).

The Second Circuit has not had occasion, following *Traynor,* to revisit the issue of the scope of the judicial review bar of section 211(a). However, the Seventh Circuit has applied *Johnson* and *Traynor* to hold that section 211(a) does not preclude "substantial constitutional challenges to the veterans' benefits statutes and regulations, as well as to the procedures established by the V.A. to administer them." *Marozsan v. United States,* 852 F.2d 1469, 1472 (7th Cir.1988). In *Marozsan,* an individual veteran challenged, on due process grounds, the methods employed by the Administrator in denying his claim for benefits. In an exhaustive opinion, a majority of the en banc court concluded that:

> The reasoning of the *Johnson* and *Traynor* decisions mandates federal court review of the type of challenge to the V.A.'s procedures that Marozsan presents. It is hard to see how the Court would insist on the right to review the constitutionality of legislation, but hold immune from review all unconstitutional administrative actions taken pursuant to that legislation. Similarly, because courts can review V.A. action for compliance with non-V.A. statutes, if would be anomalous to suggest that the V.A.'s actions in violation of the Constitution are immune from scrutiny.

*Id.* at 1476–77 (citation and footnote omitted).

Following *Marozsan,* one court in this district has stated that there exists a conflict in the circuits on "the issue of whether or not the Judicial Review Preclusion [of section 211(a) ] precludes review of the con-

---

**4.** It is not entirely clear what the effect of the Supreme Court's reversal is upon the Second Circuit's rejection of the *Wayne State* line of cases. Those cases concerned a different type of claim than that at issue in *Traynor,* which the Supreme Court ultimately held was not barred by section 211. The issues are related, in that each concerns the question whether a regulation or policy of the VA is contrary to a statute. However, *Wayne State* dealt with a claim that the regulation was contrary to the agency's own enabling statute, whereas *Traynor* concerned a challenge to VA regulations and policies as contrary to a separate federal statute.

Language in *Traynor* did suggest that *Wayne State* might have been incorrectly decided. Distinguishing the claim of the *Traynor* plaintiffs, the Court noted that "[t]here is no claim that the regulation at issue is inconsistent with the statute under which it was issued...." *Traynor v.*

*Turnage, supra,* 485 U.S. at 544, 108 S.Ct. at 1379. However, as one district court has explained, the recently enacted Veteran's Judicial Review Act, 38 U.S.C. § 223(c), which "amends section 211(a) to explicitly authorize judicial review in the Federal Circuit Court for all statutory challenges to VA rulemaking filed after September 1, 1989 ... was intended to clarify pre-existing Congressional intent to allow statutory challenges to VA rules, and not to reverse a prior policy embodied in section 211(a) to bar such challenges." *Nehmer v. United States Veterans' Admin.,* 712 F.Supp. 1404, 1410 (N.D.Cal. 1989). The court's discussion of the legislative history is persuasive and supports its conclusion that Congress has endorsed the rule enunciated in *Wayne State.* In any event, judicial review of challenges to VA regulations as exceeding the Administrator's statutory authority is now permitted under section 211(a).

stitutionality of V.A. procedures and practices." *Cooper v. United States,* No. 88 Civ. 6106, slip op., 1989 WL 71213 (S.D. N.Y. June 23, 1989) (available on Lexis at 1989 U.S.Dist. LEXIS 6924). That court cited the Fifth Circuit's decision in *Anderson,* and the Seventh Circuit's decision in *Marozsan,* as presenting the conflicting views. The Court in *Cooper* then quoted the Second Circuit decision in *Pappanikoloaou,*[5] which specifically agreed with the Fifth Circuit's *Anderson* holding.

Applying the language in *Pappanikoloaou,* the district court in *Cooper* then examined the specific allegations of the complaint and other papers submitted by plaintiff in order to determine whether the plaintiff was indeed "attempting to circumvent the Judicial Review Preclusion with respect to the V.A.'s decision ... by casting his complaint as a 'constitutional claim arising out of a denial of benefits.'" *Cooper v. United States, supra* (quoting *Pappanikoloaou, supra,* 762 F.2d at 9).

The approach thus taken by the court in *Cooper* is similar to that followed in the Ninth Circuit, where a court faced with a constitutional challenge to actions of the VA "must examine the substance of the claims" in order to "determine whether a case involves a challenge to the constitutionality of the laws or involves the interpretation of a particular provision of the laws to a particular set of facts." *Tietjen v. United States Veteran's Admin.,* 692 F.Supp. 1106, 1108–09 (D.Ariz.1988), *aff'd,* 884 F.2d 514 (9th Cir.1989); *Rosen v. Walters,* 719 F.2d 1422, 1423 (9th Cir.1983) ("[w]e have examined the 'substance' of [plaintiff's] claim to determine whether it falls within the prohibition of § 211(a) ... [w]e think it is quite clear that [plaintiff's] concern is with the failure to award him benefits on the facts of his disability claim.").

This Court agrees with the district court in *Cooper* that the proper approach, under section 211(a) and *Pappanikoloaou* as well as under applicable Supreme Court authority, to a claim framed as a constitutional challenge to a procedure or policy of the VA is to examine the substance of the claim to determine if the claim is, in essence, merely an attempt to circumvent the nonreviewability of an individual benefit determination by framing the challenge as a constitutional one. Under this approach, plaintiff's claim survives defendants' motion to dismiss for lack of subject matter jurisdiction.

■ This type of inquiry is equally appropriate to a claim involving issues of medical care. The Second Circuit has noted that claims alleging a "failure of the Veterans Administration to provide adequate medical treatment ... seek precisely the type of judicial review that Congress, in enacting 38 U.S.C. § 211(a), expressly prohibited." *In re Agent Orange Product Liability Litigation,* 818 F.2d 194, 201 n. 2 (2d Cir.1987). *See Ryan v. Cleland,* 531 F.Supp. 724, 731 (E.D.N.Y.1982) (complaint alleging failure of VA to provide veterans with medical treatment to which they contend they are entitled dismissed for lack of jurisdiction); *Hartmann v. United States,* 615 F.Supp. 446, 449 (E.D.N.Y.1985) (veteran group's claim that VA was providing inadequate diagnoses and treatment for a particular disease and request that court order agency to provide specific tests and care barred by section 211(a)). It appears certain that section 211(a) bars claims that, in substance, seek to compel the VA to provide a particular type of medical treatment or care to particular claimants. On the other hand, claims which in substance do not "attempt to circumvent § 211(a)" by seeking a certain type or level of medical treatment or care "on a constitutional claim arising out of a denial of [care]" would not be barred. *Cf. Pappanikoloaou v. Administrator of the Veterans Admin., supra,* 762 F.2d at 9.

---

5. As noted above, that case states that:

To the extent the complaint seeks damages for the V.A.'s denial of due process in handling his claim, we agree with those circuits that have held that one may not circumvent § 211(a) by seeking damages on a constitutional claim arising out of a denial of benefits. *Pappanikoloaou v. Administrator of Veterans' Admin., supra,* 762 F.2d at 9.

Only one reported decision has addressed the specific issue presented in the instant case. In *Falter v. Veterans' Admin.*, 502 F.Supp. 1178 (D.N.J.1980), the plaintiffs claimed that patients at a certain VA hospital were "treated in a disparate manner in comparison with patients at other V.A. hospitals." *Id.* at 1182. The court held that review of this claim was not barred by section 211(a), and stated that "the V.A. ... violates equal protection if it permits two hospitals serving the same types of patients under the same statutes and regulations to provide substantially different treatment to those patients." As might be expected, plaintiff relies heavily on *Falter* in opposition to defendants' motion to dismiss. Defendants insist that *Falter* is not controlling in this case.

As defendants point out, a district court in this Circuit has interpreted *Falter* as having specifically declined to review any equal protection claim based upon the provision of medical care. *See Hartmann v. United States*, 615 F.Supp. 446, 449 (E.D. N.Y.1985). As understood by the court in *Hartmann*, *Falter* created a "third exception to the § 211(a) jurisdictional bar" by holding "that § 211(a) did not preclude jurisdiction over claims of basic rights to liberty and property rising to the level of a constitutional claim for equal protection." *Id.* at 449.

The plaintiffs in *Hartmann* were Viet Nam veterans attempting to compel the VA to provide diagnostic testing and correct treatment for a condition known as filariasis.[6] The plaintiffs argued that their equal protection rights were being violated because the VA failed to provide the type of medical care for filariasis which World War II veterans received. The plaintiffs attempted to rely on *Falter*, but the district court determined that their reliance was misplaced, on the grounds that the district court in *Falter* "particularly refused to

frame disparities in delivery of medical care as equal protection issues subject to review." *Hartmann v. United States, supra*, 615 F.Supp. at 449.

This Court disagrees with that assessment of the court's decision in *Falter*. The court in *Hartmann* quoted *Falter*'s statement that "When I say that they are treated differently, I am not referring to the substance of their medical or psychiatric treatment, I am referring to how they are treated as human beings." *Falter v. Veterans' Admin., supra*, 502 F.Supp. at 1185. Notwithstanding this statement, the court in *Falter* also noted later in its opinion: "Similarly, and this is the one area that concerns medical treatment, if patients receive better medical care elsewhere in the V.A. system there may be no need to ever address the right to treatment questions. *That is to say that if the V.A. provides good quality medical care in its other hospitals but not at Lyons, as the plaintiffs contend, the equal protection guarantee may be all that is needed to provide the plaintiffs with the relief sought."* *Id.* at 1190. Thus, it is apparent that the court in *Falter* did address issues concerning unequal levels of medical care among the VA hospitals.

While the Court thus reads *Falter* differently than did the district court in *Hartmann*, it does not necessarily follow that the Court believes *Hartmann* to have been wrongly decided,[7] nor does it follow that a denial of defendants' motion to dismiss would be inconsistent with the decision in that case. As discussed above, an examination of the substance of the plaintiffs' claims in *Falter* led the district court to conclude that, in essence, they challenged the VA's failure to provide them a particular type of medical treatment. In the instant case, the Court must look to the substance of plaintiff's claims to determine if it, too, merely seeks to dress a challenge

6. "Filariasis is a disease caused by a minute parasitic worm endemic to parts of Viet Nam and transmitted by certain species of mosquito." *Id.* 615 F.Supp. at 446.

7. The *Hartmann* decision has been cited favorably by the Second Circuit for the proposition

that veterans may not bring judicial claims challenging the failure of the VA to provide adequate medical treatment. *See In re Agent Orange Liability Litigation, supra*, 818 F.2d at 201 n. 2.

to the adequacy of the treatment provided in the clothes of a constitutional claim.

This case presents a very close question. A reading of the complaint does suggest that plaintiff asserts that s.c.i. veterans at Castle Point are being denied some minimum level of care, regardless of the alleged differences between their treatment and that provided similarly situated patients at other VA medical centers. Insofar as the complaint does assert such a claim, the Court finds that it is barred by section 211(a). However, the complaint also contains concrete allegations that s.c.i. veterans at Castle Point, as a class, are afforded lesser levels of care than other s.c.i. veterans. Plaintiff's specific assertions also include distinctions in the types of care which might, under *Hartmann* and *Falter*, be thought to encompass "how they are treated as human beings." *See Hartmann v. United States, supra,* 615 F.Supp. at 449 (quoting *Falter v. Veterans' Administration, supra,* 502 F.Supp. at 1185).[8]

In sum, the Court finds that plaintiff has raised a constitutional claim which goes beyond a challenge to the treatment being provided s.c.i. veterans at Castle Point. Accordingly, section 211(a) does not bar consideration of plaintiff's complaint, and defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

## II. *Associational Standing of EPVA.*

■ Defendants argue that plaintiff EPVA lacks standing to assert the instant claim. The parties agree that the applicable test for associational standing is that set forth in *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977):

an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 343, 97 S.Ct. at 2441.

Defendants do not assert that EPVA fails to meet the first two prongs of this test. They argue only that EPVA fails to meet the *Hunt* standard because the participation of individual members of the association in the lawsuit is required. The Court disagrees.

As plaintiff points out in its response, the complaint in the instant case does not challenge the treatment or care provided to any individual s.c.i. veteran at Castle Point. Indeed, insofar as it did attempt to do so the Court would be barred from hearing such a claim under section 211(a). *See* discussion, *supra.* Rather, plaintiff challenges the systemic disparities in care between Castle Point and other VA medical centers. Such a challenge does not require a fact specific inquiry into any individual's particular medical treatment. Accordingly, the Court finds that EPVA has associational standing to assert claims on behalf of its members.

## III. *Class Certification.*

■ Plaintiff has moved, pursuant to Rule 23(b)(1) and (2) and, alternatively, Rule 23(b)(3), Fed.R.Civ.P., for certification of this case as a class action. Plaintiff defines the proposed class as "[a]ll spinal-cord-injured veterans who are or from 1985 to the present were entitled to medical treatment for spinal cord injuries at, or under the auspices of, the Castle Point Veterans Administration Medical Center," and asks the Court to designate plaintiff EPVA as class representative, and Jarblum, Solomon & Fornari, P.C. as class counsel.

---

**8.** For example, plaintiff asserts that at Castle Point staff have been instructed to "save time by administering all bowel care in the general patient rooms," whereas at other VA medical centers bowel evacuation is normally performed in private bathrooms or specially designed private rooms. Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, filed November 17, 1989, at 12. In addition, plaintiff alleges that at Castle Point, as opposed to other VA medical centers, there is no regular schedule for personal hygiene of s.c.i. patients. *Id.* In the Court's view, these are not simply issues of appropriate medical care, but encompass notions of basic human dignity.

Rule 23, Fed.R.Civ.P., governs the certification of class actions and has as its main objectives the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications. *See* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1754.

Pursuant to Rule 23(a), one or more members of the class may sue or be sued upon the meeting of four requirements:
(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), Fed.R.Civ.P. Once these criteria have been satisfied, an action will be certified as a class action if it meets one of the following additional conditions provided for in Rule 23(b): (1) separate actions might adversely affect class members or the opposing party; or (2) injunctive or declaratory relief is sought; or (3) common questions predominate over individual questions.

If class certification is necessary and if a request for certification is timely and properly made, fulfillment of the conditions set forth in Rules 23(a) and 23(b) will permit a court to grant class certification in the action. *See Koster v. Perales*, 108 F.R.D. 46, 48 (E.D.N.Y.1985).

According to EPVA, it is a New York not-for-profit corporation with a membership of over 2,000 s.c.i. veterans who are catastrophically disabled paraplegics and quadriplegics. These members reside throughout the Northeast and in particular in the vicinity of Castle Point. Plaintiff asserts that the proposed class consists of over 2,000 class members.

Defendants argue that the class should not be certified for two reasons. First, defendants contend that the proposed class fails to meet the numerosity requirement of Rule 23(a), because "[t]he proposed class and the membership of the EPVA are [ ] virtually identical." Defendants' Memorandum of Law in Support of Their Motion to Dismiss And in Opposition to Motion for Class Certification, filed September 26, 1989, at 21. Second, defendants argue that EPVA fails to meet the typicality requirement of Rule 23(a). Both of these arguments must be rejected.

In its reply papers, EPVA makes clear that the "over 2,000" members of EPVA are not identical to the "over 2,000" members of the proposed class. EPVA claims that the overlap between the two groups is perhaps one half. Because this basis of defendants' opposition to class certification has thus been credibly refuted by plaintiff, the Court finds that the proposed class satisfies the numerosity requirement of Rule 23(a).

Defendants next argue that EPVA's claims are not typical of the claims of the proposed class because an organization cannot be a member of the proposed class since it can assert no constitutional injury to itself. They cite *National Association of Concerned Veterans v. Secretary of Defense*, 487 F.Supp. 192 (D.D.C.1979), for the proposition that an organization which cannot itself be a member of the proposed class cannot represent the class.

Courts have certified organizations as class representatives. *See Women's Committee for Equal Employment v. N.B.C.*, 71 F.R.D. 666 (S.D.N.Y.1976); *Massachusetts Ass'n of Older Americans v. Spirito*, 92 F.R.D. 129 (D.Mass.1981). The Court sees no reason why EPVA, which has been found to have associational standing to assert the claims of its members, cannot likewise represent the class. Defendants have advanced no persuasive reason for such a result. Accordingly, because the Court determines that the action satisfies the prerequisites of subdivisions (a) and (b)(1)(A) and (b)(2) and (b)(3) of Rule 23, Fed.R. Civ.P., plaintiff's motion for class certification is granted.

CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaint is denied.

Plaintiff's motion for class certification is granted, and the class is hereby certified as requested in plaintiff's motion. The parties are directed to confer and submit a joint scheduling letter by May 17, 1991.

Settle order on notice.